UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

GERI P. ROLLER,

                Plaintiff,

     v.

JO ANNE B. BARNHART, Commissioner of
Social Security,

                Defendant.

CASE NO.  C06-5052FDB-KLS

REPORT AND
RECOMMENDATION

Noted for September 15, 2006

Plaintiff, Geri P. Roller, has brought this matter for judicial review of the denial of her application for supplemental security income ("SSI") benefits.  This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976).  After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Honorable Franklin D. Burgess' review.

FACTUAL AND PROCEDURAL HISTORY

Plaintiff currently is forty-two years old.[1] Tr. 56.  She has a high school equivalent education and past work experience as a housecleaner, a parts deliverer, a cashier, an office assistant, and a flagger. Tr.

---

[1]Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

1   23, 90, 97.

2    On February 29, 2000, plaintiff filed an application for SSI benefits, alleging disability as of July 1,

3   1999, due to trouble understanding what she reads, chronic abdominal pain, chronic anxiety and panic

4   disorder, chronic depression, hypertension, a left knee injury with arthritis, and migraine headaches. Tr. 22-

5   23, 74, 84.  Her application was denied initially and on reconsideration. Tr. 22, 56-58, 64.

6    A hearing was held before an administrative law judge ("ALJ") on September 6, 2001, at which

7   plaintiff, represented by counsel, appeared and testified, as did a medical expert and a vocational expert. Tr.

8   827-882.  On October 19, 2001, the ALJ issued a decision finding plaintiff capable of returning to her past

9   relevant work, and therefore not disabled. Tr. 449-59.  That decision, however, was remanded back by the

10   Appeals Council, which directed the ALJ to: obtain additional evidence concerning plaintiff's mental and

11   physical impairments; give further consideration to Dr. R. H. Rozendal, one of plaintiff's treating physicians;

12   further evaluate plaintiff's subjective complaints and residual functional capacity; and obtain supplemental

13   evidence from a vocational expert. Tr. 463-66.

14    A supplemental hearing was held before the same ALJ on January 13, 2004, at which, plaintiff did

15   not appear, but at which her counsel did appear and at which two medical experts and a vocational expert

16   also appeared and testified. Tr. 883-916.  A third supplemental hearing was held on May 6, 2004, as well,

17   this time at which plaintiff, represented by counsel, appeared and testified. Tr. 917-34.  On July 31, 2004,

18   the ALJ issued a second decision, once more determining plaintiff to be not disabled, finding specifically in

19   relevant part:

20    (1) at step one of the disability evaluation process, plaintiff had not engaged in substantial gainful activity since her alleged onset date of disability;

21

22    (2) at step two, plaintiff had "severe" impairments consisting of chronic pain syndrome, cardiogenic pulmonary edema with mitral valve regurgitation and depression;

23

24    (3) at step three, none of plaintiff's impairments met or equaled the criteria of any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1;

25    (4) at step four, plaintiff had the residual functional capacity to performed a modified range of sedentary work, which precluded her from performing her past relevant work; and

26

27    (5) at step five, plaintiff was capable of performing other jobs existing in significant numbers in the national economy.

28

Tr. 33-34.  Plaintiff's request for review was denied by the Appeals Council on December 7, 2005, making

1    the ALJ's decision the Commissioner's final decision. Tr. 10; 20 C.F.R. § 416.1481.

2    　　　　On January 31, 2006, plaintiff filed a complaint in this Court seeking review of the ALJ's decision.

3    (Dkt. #1-#3). Specifically, plaintiff argues that decision should be reversed and remanded for an award of

4    benefits for the following reasons:

5    　　　　(a)    the ALJ erred in evaluating the medical evidence in the record;

6    　　　　(b)    the ALJ erred in finding plaintiff's anxiety disorder to be not severe;

7    　　　　(c)    the ALJ erred in finding plaintiff's impairments did not meet or equal the criteria
　　　　　　　　　of any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1;
8

9    　　　　(d)    the ALJ erred in assessing plaintiff's credibility;

10    　　　　(e)    the ALJ erred in evaluating the lay witness evidence in the record;

11    　　　　(f)    the ALJ erred in assessing plaintiff's residual functional capacity; and

12    　　　　(g)    the ALJ erred in finding plaintiff capable of performing other work existing in
　　　　　　　　　significant numbers in the national economy.

13    The undersigned agrees the ALJ erred in determining plaintiff to be not disabled, and, for the reasons set

14    forth below, recommends the ALJ's decision be reversed and this matter be remanded to the Commissioner

15    for an award of benefits.  Although plaintiff requests oral argument in this matter, the undersigned finds

16    such argument to be unnecessary here.

17    　　　　　　　　　　　　　　　　DISCUSSION

18    　　　　This Court must uphold the Commissioner's determination that plaintiff is not disabled if the

19    Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to

20    support the decision.  Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986).  Substantial evidence is

21    such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Richardson

22    v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985).  It is more than

23    a scintilla but less than a preponderance.  Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir.

24    1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991).  If the evidence admits of more than

25    one rational interpretation, the Court must uphold the Commissioner's decision.  Allen v. Heckler, 749 F.2d

26    577, 579 (9th Cir. 1984).

27    I.    The ALJ Erred in Evaluating the Medical Evidence in the Record

28    　　　　The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the

medical evidence. <u>Reddick v. Chater</u>, 157 F.3d 715, 722 (9th Cir. 1998).  Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. <u>Sample v. Schweiker</u>, 694 F.2d 639, 642 (9th Cir. 1982).  In such cases, "the ALJ's conclusion must be upheld." <u>Morgan v. Commissioner of the Social Security Administration</u>, 169 F.3d 595, 601 (9th Cir. 1999).  Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." <u>Id.</u> at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." <u>Reddick</u>, 157 F.3d at 725.  The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." <u>Id.</u>  The ALJ also may draw inferences "logically flowing from the evidence." <u>Sample</u>, 694 F.2d at 642.  Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." <u>Magallanes v. Bowen</u>, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1996).  Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." <u>Id.</u> at 830-31.  However, the ALJ "need not discuss <em>all</em> evidence presented" to him or her. <u>Vincent on Behalf of Vincent v. Heckler</u>, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in the original).  The ALJ must only explain why "significant probative evidence has been rejected." <u>Id.</u>; <u>see also</u> <u>Cotter v. Harris</u>, 642 F.2d 700, 706-07 (3d Cir. 1981); <u>Garfield v. Schweiker</u>, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. <u>Lester</u>, 81 F.3d at 830.  On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." <u>Batson v. Commissioner of Social Security Administration</u>, 359 F.3d 1190, 1195 (9th Cir.,2004); <u>Thomas v. Barnhart</u>, 278 F.3d 947, 957 (9th Cir. 2002); <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1149 (9th Cir. 2001).  An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." <u>Lester</u>, 81 F.3d at 830-31.  A non-examining physician's opinion may

constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

A.    Dr. Rozendal

In late April 1999, Dr. R. H. Rozendal, one of plaintiff's treating physicians, wrote a letter, in which he stated that plaintiff had chronic abdominal pain, which he felt would "be a continuing problem, with no potential for definitive solution," as well as chronic anxiety and panic disorder, which were "occasionally disabling for short periods." Tr. 307.  He opined that these conditions, along with plaintiff's chronic depression and hypertension "made it impossible for her to meet employment requirements for physical activity and reliability," and that "[c]urrently available treatment" seemed "incapable of improving the situation to any substantial and sustained extent." Id.  In mid-November 1999, he stated again in one of his treatment notes that she would "not be able to go back to work as a flagger." Tr. 302.

In late April 2000, Dr. Rozendal wrote that "[a]t this point she should not return to the flagging work because of the need for prolonged standing and potential sudden self-protective movements, which would aggravate her symptoms." Tr. 296.  In early March 2001, Dr. Rozendal wrote a third letter in which he stated that plaintiff's "[c]hronic severe" anxiety was "not well controlled by medication," and that her degenerative joint disease, especially in her knees, "markedly" diminished "her ability to stand or work for any length of time." Tr. 729.  He concluded that she was "unable to work" and would "be unable to do so for an extended period, certainly exceeding 1 year." Id.

In his decision, however, the ALJ noted only Dr. Rozendal's two opinions that plaintiff could not go back to her work as a flagger, stating that he accepted those opinions and that he agreed with them. Tr. 30. Plaintiff argues the ALJ erred in failing to address the late April 1999 and early March 2001 opinions of Dr. Rozendal, in which he found plaintiff essentially incapable of working.  The undersigned agrees.  There is no indication that the ALJ actually considered those two opinions.  Nor did the ALJ present any reasons for rejecting them or why he felt Dr. Rozendal's opinions that plaintiff merely could not return to her past job as a flagger carried more weight.

B.    Dr. Tegenfeldt

In early December 2001, Dr. Edwin G. Tegenfeldt, another of plaintiff's treating physicians, opined that her degenerative joint disease and chronic pelvic pain made it "[v]ery difficult" for her to ambulate, but

that she might be able to "work while sitting" and do a "half day sit down job." Tr. 719-20.  In mid-May 2002, Dr. Tegenfeldt opined that plaintiff would "be unable to work as a flagger," and that she might "be able to work at a sit down job" if she were able to "get up and move around often." Tr. 713.  He felt that treatment was unlikely to restore her ability to perform at least half-time in a normal day to day work setting, and that she "[w]ould likely need retraining." Tr. 714.  In early October 2002, Dr. Tegenfeldt again opined that "[s]edentary work should be considered" for plaintiff. Tr. 711.  However, he also opined that given her "emotional state," plaintiff might "not work again without job retraining." Id.

The ALJ discussed these opinions, noting that they were "in agreement with the general assessment of [medical expert] Dr. [William] Nelp at the [second] hearing that" plaintiff was "limited to sedentary or light work." Tr. 30-31.  Plaintiff argues the ALJ erred by mis-characterizing Dr. Tegenfeldt's opinion regarding her ability to do a sit down job without the need to "get up and move around often."  However, the ALJ did specifically note that aspect of Dr. Tegenfeldt's opinion. See Id.  Indeed, the ALJ expressly addressed that limitation in his assessment of plaintiff's residual functional capacity by including therein the "need to alternate sitting and standing." Id.

Lastly, plaintiff argues the ALJ erred by ignoring Dr. Tegenfeldt's opinion that medical treatment was not likely to restore her ability to work half-time in a day to day work setting.  That opinion, however, conflicts with Dr. Tegenfeldt's other opinions noted above that sedentary work and a "sit down job" should be considered.  The resolution of ambiguities and conflicts in the medical evidence, however, is solely the function of the ALJ. Reddick, 157 F.3d at 722; Sample, 694 F.2d at 642.  Accordingly, it was not error for the ALJ to find the overall tenor of Dr. Tegenfeldt's opinions were that he felt plaintiff was capable of performing sedentary work.  As noted by the ALJ, furthermore, those opinions generally agreed with the testimony of Dr. Nelp, who found "she certainly could do sedentary" work. Tr. 893.

C.   Dr. Weigel

In his decision, the ALJ stated that there was "no diagnosis of adhesions or another impairment that might cause" plaintiff's alleged symptoms. Tr. 29.  Plaintiff argues that because the record does contain medical opinion evidence that a neuroma caused her alleged pain, the ALJ's findings here were erroneous.  The undersigned agrees.  In late August 1998, plaintiff was examined by Dr. William L. Weigel, who diagnosed her with "[a]bdominal wall pain, possibly adhesions," and "[n]erve entrapment," probably due to

"a small regrowth neuroma." Tr. 232.  In early November 1998, Dr. Weigel noted she had received "two abdominal wall blocks for the neuroma." Tr. 218.  Further, Dr. Weigel continued to make similar findings regarding plaintiff's abdominal pain and its likely cause, a neuroma, through early February 1999. Tr. 194, 197, 200.  ˙

     D.   Dr. Neims

     Plaintiff was evaluated by Daniel M. Neims, Psy.D., in late March 2000.  He diagnosed plaintiff with a depressive disorder secondary to chronic pain, an anxiety disorder by history and a current global assessment of functioning ("GAF") score of 60 (the highest in the past year being 65). Tr. 275.  Dr. Neims opined that plaintiff's "current psychological symptomatology, in the absence of physical disabilities and chronic pain, would not disable her from sustained gainful employment." Tr. 276.

     Dr. Neims again evaluated plaintiff in mid-February 2004.  This time he diagnosed her with a mood disorder associated with physical conditions, an anxiety disorder and a current GAF score of 50 (the highest in the past year being 55). Tr. 798.  Dr. Neims stated that plaintiff seemed "moderately worse than during her last meeting" with him, "particularly with regard to the reported intensity of anxiety and dysphoria." Id. He further opined in relevant part as follows:

> She continues to regard her problems as predominately somatic in nature and feels physiological issues preclude her from SGA [substantial gainful activity]. . . .
>
> She demonstrates some patterns of inconsistently maintained attention and concentration this date.  She notes trends towards moderate isolation and withdrawal.  Her adaptability to new setting [sic] may be moderately strained secondary to difficulties in coping with anxious arousal.  Her diminished self-esteemed and self-efficacy may leave her more vulnerable to work place stressors.

Id.

     Plaintiff argues the ALJ mischaracterized Dr. Neims' opinions in stating that the mental functional limitations Dr. Neims found were only "mild" in late March 2000, and "moderate" in mid-February 2004. See Tr. 28.  This mischaracterization, plaintiff asserts, constitutes error.  The undersigned, however, fails to see the error here, or, to the extent that there was any error in the ALJ's characterization of those opinions, finds such error to be harmless. See Batson v. Commissioner of the Social Security Administration, 359 F.3d 1190, 1197 (9th Cir. 2004) (applying harmless error standard); Curry v. Sullivan, 925 F.2d 1127, 1131 (9th Cir. 1990) (holding ALJ committed harmless error).  In late March 2000, Dr. Neims found plaintiff to be capable of substantial gainful activity from a psychological standpoint, a clear indication that he felt her

1  mental functional limitations at the time, if any, to be mild at most.  Further, Dr. Neims expressly stated in

2  mid-February 2004, that plaintiff seemed "moderately worse" than the last meeting.

3          E.      Dr. Harrison and Dr. Peterson

4          A psychiatric review technique form was completed by Kristine Harrison, Psy.D., in late April 2000,

5  and affirmed by Anita Peterson, Ph.D., in early September 2000.  Plaintiff was assessed with a depressive

6  disorder secondary to pain and an anxiety disorder, and was found to have slight restrictions in her activities

7  of daily living, slight difficulties in maintaining social functioning, moderate deficiencies of concentration,

8  persistence or pace, and no episodes of deterioration or decompensation. Tr. 337-38, 341.

9          A mental residual functional capacity assessment form also was completed by Dr. Harrison and

10  affirmed by Dr. Peterson at that time.  They found plaintiff to be moderately limited in her ability to

11  understand, remember and carry out detailed instructions, maintain attention and concentration, and interact

12  appropriately with the general public. Tr. 330-31.  In addition, Drs. Harrison and Peterson found plaintiff

13  capable of understanding, remembering and completing simple tasks, but that she "should not work with the

14  public, in other than brief, superficial contacts," and that she could "work with a limited number of co-

15  workers in a slow paced, low-stress setting." Tr. 332.

16          Plaintiff argues that while the ALJ referred to the findings of Dr. Harrison and Dr. Peterson in his

17  decision (Tr. 28), he failed to set forth any findings or analysis of those findings.  As such, plaintiff asserts,

18  the ALJ erred.  The undersigned agrees.  Although the ALJ did limit plaintiff to simple, repetitive tasks in

19  his assessment of her residual functional capacity (Tr. 31), which Drs. Harrison and Peterson also found,

20  there is no limitation with respect to public and co-worker contact contained in that assessment.  While this

21  may indicate the ALJ did not accept such a limitation, the ALJ erred in failing to provide any reason as to

22  why he was not adopting it.

23  II.     The ALJ Erred in Finding Plaintiff's Anxiety Disorder Not Severe

24          To determine whether a claimant is entitled to disability benefits, the ALJ engages in a five-step

25  sequential evaluation process. 20 C.F.R.§ 416.920.  At step two of that process, the ALJ must determine if

26  an impairment is "severe."  Id.  An impairment is "not severe" if it does not "significantly limit" a claimant's

27  mental or physical abilities to do basic work activities. 20 C.F.R.§ 416.920(a)(4)(iii), ( c); Social Security

28  Ruling ("SSR") 96-3p, 1996 WL 374181 *1.  Basic work activities are those "abilities and aptitudes

1  necessary to do most jobs." 20 C.F.R.§ 416.921(b); SSR 85- 28, 1985 WL 56856 *3.

2       An impairment is not severe only if the evidence establishes a slight abnormality that has "no more

3  than a minimal effect on an individual[']s ability to work."  See SSR 85-28, 1985 WL 56856 *3; Smolen v.

4  Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir.1988).  Plaintiff

5  has the burden of proving that her "impairments or their symptoms affect her ability to perform basic work

6  activities." Edlund v. Massanari, 253 F.3d 1152, 1159-60 (9th Cir. 2001); Tidwell v. Apfel, 161 F.3d 599,

7  601 (9th Cir. 1998).  The step two inquiry described above, however, is a de minimis screening device used

8  to dispose of groundless claims.  Smolen, 80 F.3d at 1290.

9       Plaintiff argues the ALJ erred in not finding her anxiety disorder severe, despite medical evidence in

10  the record to the contrary.  The undersigned agrees.  With respect to that impairment, the ALJ found as

11  follows:

12         The claimant reports severe anxiety and panic attacks.  She has taken Xanax for over
   eight years for her reported anxiety, but the symptoms are rarely mentioned in the

13         record.  She said that she saw her doctor when she could not make it in to the hearing,
   but there are no records of this visit.  When she was having her heart problems, she

14         reported going to the emergency room for anxiety attacks, but there are no treatment
   records memorializing such visits.  She said that she went to a counselor for two years,

15         but again there are no treatment notes in the record.  It appears that the claimant's
   constant use of Xanax has been based on her reported symptoms.  Dr. Neims noted

16         tremulousness, but this is not necessarily due to anxiety.  I do not find that the claimant
   has a severe anxiety disorder.

17
18  Tr. 29.  These findings, however, are not supported by substantial evidence.

19       The record contains medical evidence indicating plaintiff's anxiety disorder has more than a minimal

20  effect on her ability to do basic work activities.  For example, Dr. Neims expressly diagnosed plaintiff with

21  an anxiety disorder both times he evaluated her. Tr. 275, 798.  Although Dr. Neims found minimal mental

22  functional limitations in late March 2000 (Tr. 276), in mid-February 2004, plaintiff was found to

23  demonstrate "some patterns of inconsistently maintained attention in concentration" at least in part due to

24  her diagnosis of anxiety, and it was noted that her adaptability to a new setting could be "moderately

25  strained secondary to difficulties in coping with anxious arousal." Tr. 798.

26       As noted above, Drs. Harrison and Peterson assessed plaintiff with an anxiety disorder as well (Tr.

27  338), noting she suffered from several moderate mental functional limitations (Tr. 331-32, 341).  Indeed,
   they specifically found she "should not work with the public, in other than brief, superficial contacts," due

28  to her depressed mood and anxiety. Tr. 332.  That limitation alone is sufficient to show plaintiff's anxiety

disorder should have been found to be severe.  While Dr. Rozendal is not a specialist in the field of psychopathology, he too opined as to significant work-related restrictions due in part to her "[c]hronic anxiety and panic disorder," which was "not well controlled by medication." Tr. 307, 729.

III.    The ALJ Properly Found None of Plaintiff's Impairments Met or Equaled Any of Those Listed in 20 C.F.R. Part 404, Subpart P, Appendix 1

At step three of the evaluation process, the ALJ must evaluate the claimant's impairments to see if they meet or equal any of the impairments listed in 20 C.F. R. Part 404, Subpart P, Appendix 1 (the "Listings"). 20 C.F.R § 416.920(d); Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).  If any of the claimant's impairments meet or equal a listed impairment, he or she is deemed disabled. Id.  The burden of proof is on the claimant to establish he or she meets or equals any of the impairments in the Listings. Tacket, 180 F.3d at 1098.

A mental or physical impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R.§ 416.908.  It must be established by medical evidence "consisting of signs, symptoms, and laboratory findings." Id.  An impairment meets a listed impairment "only when it manifests the specific findings described in the set of medical criteria for that listed impairment." SSR 83-19, 1983 WL 31248 *2.  An impairment equals a listed impairment "only if the medical findings (defined as a set of symptoms, signs, and laboratory findings) are at least equivalent in severity to the set of medical findings for the listed impairment." Id. at *2.  However, "symptoms alone" will not justify a finding of equivalence. Id.

Plaintiff argues the testimony of one of the medical experts who testified at the second hearing, Dr. Norman Gustavson,[2] supports a finding that she should have been found disabled under the Listings.  The undersigned disagrees.  At the hearing, Dr. Gustavson diagnosed plaintiff with obsessive compulsive disorder by history, a somatoform pain disorder and a pain disorder with psychological factors affecting a general medical condition, again by history. Tr. 901.  He testified that plaintiff had moderate restrictions in her activities of daily living, moderate difficulties in maintaining social functioning, marked deficiencies in concentration, persistence or pace, and no episodes of decompensation. Tr. 909.

---

[2]Although this medical expert's last name is referred to as Gustanson in the hearing transcript, both plaintiff in her briefing and the ALJ in his decision use the name Gustavson.  Accordingly, to avoid confusion, the undersigned too shall use the name Gustavson herein, rather than Gustanson.

In addition, Dr. Gustavson testified that he found plaintiff to be disabled "based on the chronisity [phonetic] of her somatization disorders." Tr. 902. He further testified that his opinion was based on his "evaluation of the record overall rather than any specific record" contained therein, and on plaintiff's continual seeking of treatment and medications "for a long period of time complaining of . . . physical ailments." Tr. 905-06. Dr. Gustavson also testified that plaintiff would meet the criteria of, and therefore be disabled under, Listing 12.04C(2) (affective disorders) (Tr. 909), which requires:

> Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and . . . A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04C(2).

The ALJ made the following findings with respect to Dr. Gustavson's testimony:

> At the first remand hearing Dr. Gustavson speculated that the claimant had a somatoform disorder based on her history of seeing [sic] treatment and medications. However, no one who has actually examined or treated the claimant has made this diagnosis. Indeed, since the claimant did not appear for the first supplemental hearing, Dr. Gustavson did not even have an opportunity to observe her presentation the claimant [sic] at the hearing. The claimant is a very active seeker of medications and medical advice. She has a lot of medical appointments, but there is little evidence that she has exhibited significant anxiety problems with cognition by any of the treating sources. Few doctors have commended [sic] on any anxiety problems and less have commented on any cognition problems. No other examining, treating or reviewing doctor has opined that she had a somatoform disorder. Dr. Gustavson was unable to point to any specific document of record to support his new diagnosis. He stated that he relied on an overall assessment. I find this opinion to be speculation not supported by the record. It is an attempt to explain and bring consistency to the inconsistencies in the record, but because it is not supported by the record I give it no weight.

Tr. 28-29. Plaintiff argues the ALJ erred in not adopting Dr. Gustavson's testimony and opinion, and thus in not finding she met Listing 12.04C(2). The undersigned disagrees.

Because Dr. Gustavson is a non-examining consulting physician, his testimony and opinion may constitute substantial evidence only if "it is consistent with other independent evidence in the record." Lester, 81 F.3d at 830-31; Tonapetyan, 242 F.3d at 1149. Here, though, while, as noted above, the ALJ may have erred with respect to the level of severity of plaintiff's anxiety disorder evidenced in the record, no other psychiatrist or psychologist has diagnosed plaintiff with a somatization disorder, let alone found her disabled based on that or any other mental impairment. This is particularly true with respect to Dr. Gustavson's finding that plaintiff's limitations met the criteria of Listing 12.04C(2). As such, the ALJ did

REPORT AND RECOMMENDATION
Page - 11

1  not err in giving his testimony and opinion no weight.

2  IV.      The ALJ Erred in Assessing Plaintiff's Credibility

3          Questions of credibility are solely within the control of the ALJ.  Sample v. Schweiker, 694 F.2d

4  639, 642 (9th Cir. 1982).  The Court should not "second-guess" this credibility determination.  Allen, 749

5  F.2d at 580.  In addition, the Court may not reverse a credibility determination where that determination is

6  based on contradictory or ambiguous evidence.  Id. at 579.  That some of the reasons for discrediting a

7  claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long

8  as that determination is supported by substantial evidence.  Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th

9  Cir. 2001).

10         To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the

11  disbelief."  Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996) (citation omitted).  The ALJ "must identify

12  what testimony is not credible and what evidence undermines the claimant's complaints."  Id.; Dodrill v.

13  Shalala, 12 F.3d 915, 918 (9th Cir. 1993).  Unless affirmative evidence shows the claimant is malingering,

14  the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing."  Lester, 81 F.2d at

15  834.  The evidence as a whole must support a finding of malingering.  O'Donnell v. Barnhart, 318 F.3d 811,

16  818 (8th Cir. 2003).

17         In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility

18  evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other

19  testimony that "appears less than candid."  Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996).  The ALJ

20  also may consider a claimant's work record and observations of physicians and other third parties regarding

21  the nature, onset, duration, and frequency of symptoms.  Id.

22         In his decision, the ALJ stated that he found plaintiff's "allegations regarding her limitations" to be

23  "not totally credible for the reasons set forth in the body of the decision."  Tr. 33.  Plaintiff argues the ALJ

24  failed to give clear and convincing reasons for finding her not totally credible, because, she asserts, "there

25  was no clearly indentifiable credibility evaluation section" in the ALJ's decision. Plaintiff's Opening Brief, p.

26  20.  The undersigned agrees.  It is true, as defendant points out, that the ALJ noted plaintiff's failure to seek

27  mental health counseling and discussed the fact that she has been able to engage in various activities of daily

28  living despite her allegations of mental impairments.  See Tr. 27, 29.

This analysis, however, was largely done in the context of determining whether plaintiff met the Listings. The undersigned is well aware that the Court may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes, 881 F.2d at 755. Here, though, while it certainly may be that plaintiff's failure to seek mental health counseling and her activities of daily living would constitute valid, clear and convincing reasons for discounting her credibility,[3] the undersigned simply cannot say that this is what the ALJ had in mind in discussing such failure and activities at step three of the disability evaluation process. As such, the undersigned is unable to infer specific and legitimate inferences from the ALJ's decision in this case. Accordingly, the ALJ erred in evaluating plaintiff's credibility.

V.     The ALJ Erred in Evaluating the Lay Witness Evidence in the Record

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d, 503, 511 (9th Cir. 2001). An ALJ may discount lay testimony if it conflicts with the medical evidence. Id.; Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984) (proper for ALJ to discount lay witness testimony that conflicts with available medical evidence). In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. Lewis, 236 F.3d at 512. The ALJ also may "draw inferences logically flowing from the evidence." Sample, 694 F.2d at 642.

Here, the record contains two statements from plaintiff's friend concerning plaintiff's physical and mental impairments and limitations. See Tr. 114-19. Plaintiff argues the ALJ erred by either ignoring or overlooking these two lay witness statements. The undersigned agrees. As noted above, while the ALJ need not provide the type of specific, clear and convincing reasons for discounting a claimant's credibility, the ALJ must provide at least some germane reason for discounting that of a lay witness. The ALJ's failure in this case even to note the existence of such statements in the record falls way short of this standard, as low as that standard may be, and thus constitutes clear error.

_____

[3]Failure to assert a good reason for not seeking a prescribed course of treatment, or a finding that a proffered reason is not believable, "can cast doubt on the sincerity of the claimant's pain testimony." Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989); see also Meanal v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ properly considered physician's failure to prescribe, and claimant's failure to request serious medical treatment for supposedly excruciating pain). Further, to determine whether a claimant's symptom testimony is credible, the ALJ may consider his or her daily activities. Smolen, 80 F.3d at 1284.

VI.   <u>The ALJ Erred in Assessing Plaintiff's Residual Functional Capacity</u>

If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2.  A claimant's residual functional capacity assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work.  <u>Id.</u>  It thus is what the claimant "can still do despite his or her limitations." <u>Id.</u>

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. <u>Id.</u>  However, a claimant's inability to work must result from his or her "physical or mental impairment(s)." <u>Id.</u>  Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." <u>Id.</u>  In assessing a claimant's residual functional capacity, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." <u>Id.</u> at *7.

Here, the ALJ assessed plaintiff with the following residual functional capacity:

> [T]he claimant could lift twenty pounds occasionally and ten pounds frequently.  She could stand four hours in an eight-hour day and sit six hours in an eight-hour day.  She would need to alternate sitting and standing.  She could occasionally climb stairs, balance, stoop, kneel, crouch, or crawl.  She could not work on ladders, ropes or scaffolds or around heights or hazards.  Giving her the benefit of the doubt, I find that she is limited to simple, repetitive tasks because of the effects of her mild to moderate mental impairments and perhaps some residual effects of her medications.

Tr. 31.  Plaintiff argues the ALJ erred in assessing her residual functional capacity because he also erred in evaluating the opinions of Dr. Rozendal and Dr. Tegenfeldt and in finding her anxiety disorder to be not severe.  As discussed above, while the ALJ did not err in evaluating the opinions of Dr. Tegenfeldt, he did so with respect to those of Dr. Rozendal and in finding plaintiff's anxiety non-severe.  Because the ALJ did so err, it is not clear that the residual functional capacity with which he assessed plaintiff included all of her mental and physical limitations.

On the other hand, plaintiff's argument that further limitations should have been included in the above residual functional capacity assessment based on a noted history of multiple shoulder dislocations with x-ray confirmation is without merit.  While there may be evidence of such a history and confirmation in

the record (see Tr. 151, 154), no medical source has opined that plaintiff suffers from any significant work-related limitations as a result thereof.  Indeed, plaintiff has not pointed to any such opinions, nor could the undersigned find any.  Because, as discussed above, the ALJ did not err in declining to adopt Dr. Gustavson's testimony and opinion, plaintiff's assertion that additional limitations also should have been included based on that testimony and opinion is meritless as well.

VII.   The ALJ Erred in Finding Plaintiff Capable of Performing Other Work Existing in Significant Numbers in the National Economy

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R.§ 416.920(d), (e).  The ALJ can do this through the testimony of a vocational expert or by reference to the Commissioner's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984).  The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." Embrey, 849 F.2d at 422 (citations omitted).  The ALJ, however, may omit from that description those limitations he or she finds do not exist. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

A.   The ALJ's Hypothetical Question

At the second hearing, the ALJ posed a hypothetical question to the vocational expert that included essentially the same limitations as those contained in plaintiff's residual functional capacity assessment. Tr. 914.  In response, the vocational expert testified that plaintiff could perform the jobs of call-out operator and parking lot attendant. Tr. 914-15.  Based on the vocational expert's testimony, the ALJ found plaintiff capable of performing other jobs existing in significant numbers in the national economy. Tr. 32.

Plaintiff argues that in light of the ALJ's errors in assessing her residual functional capacity, the hypothetical question the ALJ posed to the vocational expert was improper as well, because it did not

accurately reflect all of her limitations.  Plaintiff asserts the ALJ erred by failing to include in the hypothetical question the limitations found by Dr. Tegenfeldt and Dr. Gustavson.  As discussed above, however, the ALJ did not err in evaluating their opinions.  On the other hand, also as discussed above, the ALJ did err in evaluating the opinions of Dr. Rozendal, and due to that error, it was not clear the ALJ's assessment of plaintiff's residual functional capacity accurately reflected all of her limitations.  Because the hypothetical question was based on that assessment, the hypothetical question also cannot clearly be said to set forth a valid picture of plaintiff's condition.

Plaintiff further correctly points out that the ALJ's failure to address the medical evidence in the record indicating she should be limited in her interactions with the general public makes reliance on the hypothetical question improper as well.  She also argues the ALJ erred in not including in the hypothetical question the moderate limitation on attention and concentration found by Dr. Harrison and Dr. Peterson.  While that limitation conceivably could be accounted for by the ALJ's limitation to simple, repetitive work, as discussed above, those two limitations are not necessarily identical.  Nevertheless, to the extent the ALJ may have erred here, such error has no overall impact on the undersigned's determination here, in light of the findings set forth below regarding the vocational expert's testimony.

B.    The Jobs Identified by the Vocational Expert

Plaintiff argues the ALJ erred in finding her capable of performing the two jobs with respect to which the vocational expert testified she could perform.  Specifically, plaintiff asserts that while the ALJ limited her to simple, repetitive work, the jobs of call-out operator and parking lot attendant, as defined in the Dictionary of Occupational Titles ("DOT"), require Level 3 and Level 2 reasoning respectively.  See DOT 237.367-014; DOT 915.473-010.  The undersigned agrees.  The DOT defines Level 1 through 3 reasoning as follows:

LEVEL 3

Apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations.

LEVEL 2

Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations.

REPORT AND RECOMMENDATION
Page - 16

LEVEL 1

Apply commonsense understanding to carry out simple one- or two-step instructions.
Deal with standardized situations with occasional or no variables in or from these
situations encountered on the job.

DOT, Appendix C.  The definition of Level 1 reasoning, therefore, expressly references mere "simple one- or two-step instructions," whereas the definition of Level 2 reasoning clearly deals with more "detailed" instructions involving a few to several "concrete variables," and that of Level 3 contemplates problems involving "several" concrete variables.  Id.  While the DOT does not explicitly state that Level 1 reasoning is the same as simple, repetitive work, a commonsense reading of the DOT's definitions indicates that Level 1 reasoning is more analogous to the ability to perform simple, repetitive work tasks than is Level 2 or Level 3 reasoning.

Plaintiff also argues she is precluded from performing the job of parking lot attendant because that job, as defined by the DOT, is light work, requiring the ability to stand six out of eight hours in a workday, while the ALJ limited her to being able to stand for only four hours.  Here too, the undersigned agrees.  The job of parking lot attendant, which, as just noted, is defined by the DOT as light work, "requires walking or standing to a significant degree." DOT 915.473-010.  Under the Commissioner's regulations, work is light "when it requires a good deal of walking or standing." 20 C.F.R. § 404.1567(b).  Further, "the full range of light work requires standing or walking, off and on, for a total of approximately six hours of an eight-hour workday." SSR 83-10, 1983 WL 31251 *6.  Accordingly, the undersigned finds the ALJ's limitation on standing prevents plaintiff from performing the job of parking lot attendant.

Lastly, plaintiff argues that the moderate limitation in her ability to interact appropriately with the general public found by Dr. Harrison and Dr. Peterson is another factor that precludes her from being able to perform the jobs of call-out operator and parking lot attendant.  However, it cannot definitively be said that the ALJ erred with respect to the findings of Drs. Harrison and Peterson concerning that limitation, as he did restrict plaintiff to only simple, repetitive work.  Even if he did err in this regard though, it is not at all clear that such a limitation would preclude plaintiff from being able to perform either of the above two jobs.  While the DOT does describe "people" as a "[s]ignificant" worker function for both jobs, the term "[s]ignificant" is not defined therein, and thus may still allow for individuals who are merely moderately limited in that area. See DOT 237.367-014; DOT 915.473-010.

VIII.   <u>This Matter Should Be Remanded for an Award of Benefits</u>

The Court may remand this case "either for additional evidence and findings or to award benefits." <u>Smolen</u>, 80 F.3d at 1292.  Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." <u>Benecke v. Barnhart</u>, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted).  Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." <u>Id.</u>

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." <u>Smolen</u>, 80 F.3d at 1292; <u>Holohan v. Massanari</u>, 246 F.3d 1195, 1210 (9th Cir. 2001).  Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

<u>Smolen</u>, 80 F.3d 1273 at 1292; <u>McCartey v. Massanari</u>, 298 F.3d 1072, 1076-77 (9th Cir. 2002).  Plaintiff argues the proper course is to remand this matter for an outright award of benefits.  Based on the testimony of the vocational expert, the undersigned agrees.

Plaintiff first argues that due to the ALJ's errors, the opinions of Dr. Rozendahl, Dr. Tegenfeldt, Dr. Weigel, and Dr. Neims must be credited as true.  Where the ALJ has failed "to provide adequate reasons for rejecting the opinion of a treating or examining physician," that opinion generally is credited "as a matter of law." <u>Lester</u>, 81 F.3d at 834 (citation omitted).  However, where the ALJ is not required to find the claimant disabled on such crediting of the evidence, this constitutes an outstanding issue that must be resolved, and thus the <u>Smolen</u> test will not be found to have been met.  <u>Bunnell v. Barnhart</u>, 336 F.3d 1112, 1116 (9th Cir. 2003).  Further, "[i]n cases where the vocational expert has failed to address a claimant's limitations as established by improperly discredited evidence," the Ninth Circuit  "consistently [has] remanded for further proceedings rather than payment of benefits." <u>Bunnell</u>, 336 F.3d at 1116.

First, as discussed above, the ALJ did not err in evaluating the opinions of Dr. Tegenfeldt and Dr. Neims.  In addition, in light of the inconsistencies between Dr. Rozendal's opinions that plaintiff would not be able to engage in substantial gainful activity and his opinion that she was limited only with respect to her past relevant work, as well as those of Dr. Tegenfeldt, Dr. Nelp and other medical sources in the record

1   who indicated she was capable of working, outstanding issues remain here. The medical evidence obtained

2   from Dr. Weigel, furthermore, hardly establishes the existence of a disabling condition. Finally, there has

3   been no vocational expert testimony on any of this evidence.

4          Plaintiff next argues her testimony also must be credited as true. The Ninth Circuit has held that

5   remand for an award of benefits is required where the ALJ's reasons for discounting the claimant's

6   credibility are not legally sufficient, and "it is clear from the record that the ALJ would be required to

7   determine the claimant disabled if he had credited the claimant's testimony." Connett v. Barnhart, 340 F.3d

8   871, 875 (9th Cir. 2003). The Court of Appeals in Connett went on to state, however, that it was "not

9   convinced" the "crediting as true" rule was mandatory. Id. Thus, at least where the ALJ's findings are

10   insufficient as to whether a claimant's testimony should be "credited as true," it appears the courts "have

11   some flexibility in applying" that rule. Id.; see also Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004)

12   (applying "crediting as true" rule, but noting its contrary holding in Connett).[4]

13          That flexibility should be employed in this instance. While, as discussed above, the ALJ did err by

14   failing to clearly set forth his reasons for discounting plaintiff's credibility, it is not at all clear that such an

15   adverse credibility determination is unsupported by the substantial evidence in the record. Indeed, the ALJ

16   specifically did note that plaintiff had not sought any psychiatric or other mental health counseling, and that

17   she had engaged in a variety of significant activities of daily living, despite her allegations of disabling

18   mental and physical impairments. Thus, because outstanding issues still remain with respect to plaintiff's

19   credibility as well, the crediting as true rule should not be applied here.

20          Similarly, while the ALJ obviously erred by failing to address the lay witness statements contained in

21   the record, those statements also should not be given the force of law. It is true that the Ninth Circuit

22   previously has remanded for payment of benefits based on improperly discredited lay witness testimony. See

23   Schneider v. Barnhart, 223 F.3d 968, 976 (9th Cir. 2000) (finding that when lay evidence rejected by ALJ is

24   given effect required by federal regulations, it became clear claimant's limitations were sufficient to meet or

25   equal listed impairment). As the Court of Appeals did in Schneider, plaintiff argues this Court should find

26

27        [4]In Benecke, the Ninth Circuit found the ALJ not only erred in discounting the claimant's credibility, but also with

28   respect to the evaluations of her treating physicians. Benecke, 379 F.3d at 594. The Court of Appeals credited both the claimant's testimony and her physicians' evaluations as true. Id. It also was clear in that case that remand for further administrative proceedings would serve no useful purpose and that the claimant's entitlement to disability benefits was established. Id. at 595-96.

REPORT AND RECOMMENDATION
Page - 19

1  for her based on the lay witness statements in this case.

2      The lay witness testimony in Schneider, however, was overwhelming in support of the claimant's

3  allegations, and the Commissioner provided no evidence to rebut that testimony. See Id. Here, on the other

4  hand, the record contains significant, though perhaps yet to be proven substantial, objective medical and

5  other evidence that show plaintiff's impairments and limitations may not be as disabling as the testimony of

6  both her and the lay witness would tend to indicate.  As such, the undersigned declines to find plaintiff to be

7  disabled based on those lay witness statements.

8      The undersigned, however, agrees with plaintiff that an outright award of benefits is proper in this

9  case because of the ALJ's error in finding her capable of performing the only two jobs identified by the

10  vocational expert.  While the vocational expert certainly may have had valid reasons for testifying that

11  plaintiff could perform those jobs despite the conflict between her testimony and the information contained

12  in the DOT, in this case, the vocational expert expressly stated that her testimony was consistent with that

13  information. Tr. 915.  Because the Commissioner has the burden of proving plaintiff is able to perform other

14  jobs existing in significant numbers in the national economy (see 20 C.F.R. § 416.960(c)(2)), and because

15  the ALJ failed to resolve the conflict noted above prior to issuing his decision,[5] the Commissioner failed to

16  meet her step five burden of showing plaintiff to be not disabled.  Accordingly, the undersigned finds

17  plaintiff is entitled to an award benefits here.

18                                    CONCLUSION

19      Based on the foregoing discussion, the Court should find the ALJ improperly concluded plaintiff

20  was not disabled, and should reverse the ALJ's decision and remand this matter to the Commissioner for an

21  award of benefits.

22      Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b),

23  the parties shall have ten (10) days from service of this Report and Recommendation to file written

24  objections thereto. See also Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those

25

26  _____

27      [5]The ALJ has the affirmative responsibility to ask the vocational expert about possible conflicts between her testimony
and information in the Dictionary of Occupational Titles ("DOT"). Haddock v. Apfel, 196 F.3d 1084, 1091 (10th Cir. 1999); SSR
00-4p, 2000 WL 1898704.  Before relying on evidence obtained from a vocational expert to support a finding of not disabled,
28  therefore, the ALJ is required to "elicit a reasonable explanation for any discrepancy" with the DOT. Haddock, 196 F.3d at 1087;
SSR 00-4p, 2000 WL 189704 *1.  The ALJ also must explain in his or her decision how the discrepancy or conflict was resolved.
SSR 00-4p, 2000 WL 189704 *4.

REPORT AND RECOMMENDATION
Page - 20

objections for purposes of appeal. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **September 15, 2006**, as noted in the caption.

DATED this 24th day of August, 2006.


Karen L. Strombom
United States Magistrate Judge